# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Criminal No. 23-338 (JRT/JFD)

Plaintiff,

v.

MEREDITH A. DIRKSMEYER,
JOHN HENRY CONE-WADE, SR.,

Defendants.

**MEMORANDUM OPINION AND ORDER
ADOPTING IN PART AND REJECTING IN
PART REPORT AND RECOMMENDATION
AND AFFIRMING ORDER**

Thomas M. Hollenhorst, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN, 55415 for Plaintiff.

Andrew M. Irlbeck, **ANDREW IRLBECK LAWYER, CHARTERED**, 332 Minnesota Street, Suite W1610, St. Paul, MN 55101, for Defendant Meredith A. Dirksmeyer.

Daniel L. Gerdts, **DANIEL L. GERDTS, LAWYER**, 331 Second Avenue South, Suite 705, Minneapolis, MN 55401, for Defendant John Henry Cone-Wade, Sr.

A grand jury indicted Meredith A. Dirksmeyer and John Henry Cone-Wade, Sr. on charges of conspiracy to distribute methamphetamine and multiple counts of possession with the intent to distribute methamphetamine. Law enforcement began its investigation after receiving reliable tips from a cooperating defendant ("CD"). The investigation resulted in thirteen warrants being issued, which relied on information from the CD, ion swabs, digital surveillance, and other recovered evidence. Defendants moved to suppress the evidence claiming that the tips from the CD were unreliable and stale and that the ion

swabs constituted unlawfully seized evidence, so the warrants were not supported by probable cause.

Magistrate Judge John F. Docherty issued a report and recommendation ("R&R") recommending granting in part and denying in part Dirksmeyer's motion to suppress evidence from search warrants and denying all other motions to suppress. The Magistrate Judge also issued an order denying Defendants' motions for *Daubert* and *Franks* hearings.

Because the warrants were supported by probable cause, except for the ion swab and tracker for one of the vehicles, the Infiniti, the Court will overrule Defendants' objections and adopt the R&R's conclusion. But, the Court determines that Cone-Wade had standing to challenge the warrant to search Dirksmeyer's residence so the Court will reject the Magistrate Judge's finding to the contrary. Defendants do not challenge the order denying a *Daubert* hearing. And the Court will affirm the Magistrate Judge's denial of a *Franks* hearing, finding no error.

## BACKGROUND

### I.    FACTS

The R&R comprehensively provides the factual history of this case, and neither party objects, so the Court will incorporate it here by reference. (R. & R. at 4–15, Aug. 29, 2024, Docket No. 135.)

The investigation began on July 18, 2023, when Detective Sean Cooper and Detective Joel Johnson received a tip from a cooperating defendant ("CD"). (Gov. Ex. 9 at

2; Hr'g Tr. at 32, July 2, 2024, Docket No. 119.)   The CD informed Cooper and Johnson that Dirksmeyer had been transporting and selling large quantities of methamphetamine from the Twin Cities to Olmstead County using a black Jeep.  (Gov. Ex. 9 at 2.)  Cooper stated that the CD's identity was known to law enforcement, that the CD had provided information that was corroborated by law enforcement, and that the CD had no convictions for crimes of dishonesty.  (*Id.*)

The CD also informed the detectives that the CD had purchased methamphetamine from Dirksmeyer by contacting her cell phone and that the CD witnessed Dirksmeyer sell methamphetamine to another individual.  (*Id.*)  The CD described witnessing a sale to Mark Anthony Sanford at a residence in Stewartville, during which Dirksmeyer had a significant quantity of methamphetamine with her.  (*Id.* at 2–3.) The CD provided Sanford's address and date of birth.  (*Id.* at 2.)

Cooper confirmed the information about Sanford through internal records.  (*Id.* at 3.)  Cooper stated that Sanford was a known methamphetamine user, that he lived at the address given by the CD, and that he moved there within the last few months.  (*Id.*) Cooper also described observing suspected methamphetamine when executing an arrest warrant on a different individual at that address.  (*Id.*)

Cooper then learned that a Rochester detective received information in February 2023 from a different cooperating defendant that Dirksmeyer had engaged in methamphetamine trafficking from the Twin Cities to Olmstead County.  (*Id.*)

Relying on the tip from the CD, Cooper sought information about Dirksmeyer from the Minnesota Driver and Vehicle Services.  (*Id.*)  This search identified a Rochester address.  (*Id.*)

Detectives also reviewed internal police records, which revealed a police report Dirksmeyer had filed of a hit and run accident involving her 2017 black Jeep Grand Cherokee ("Jeep").  (*Id.*)  Dirksmeyer is a co-registered owner of the Jeep, which has a listed address in New Hope, Minnesota at an apartment building ("New Hope Apartment").  (*Id.*)

Dirksmeyer had used the phone number 469-712-0XXX to file the police report so Cooper then searched for information about the 469-712-0XXX phone number using two undescribed systems: CLEAR and CellHawk.  (*Id.*)  Those systems identified Dirksmeyer as the Verizon account holder and listed the New Hope Apartment address.  (*Id.*)

Cooper reviewed Dirksmeyer's criminal history and identified multiple felony convictions for controlled substances, including methamphetamine.  (*Id.*)

Based on this information, Cooper sought and obtained a Pen Register and Trap and Trace Device ("PRTT") warrant for the phone associated with 469-712-0XXX.  (*Id.* at 4.)  That warrant yielded no evidence.  (*Id.* at 12; Hr'g Tr. at 87.)

On July 22, 2023, Detective Jeffrey Salley went to the New Hope Apartment address and saw the Jeep in the publicly accessible parking lot.  (Gov. Ex. 14 at 3.)  Salley also observed a 2011 Infiniti ("Infiniti") of which Dirksmeyer is the sole registered owner.

(*Id.*)  Salley performed an ion swab on both the Jeep and the Infiniti, and while the Jeep did not alarm for any substances, the ion swab indicated an alarm for methamphetamine and Tetryl C (incorrectly identified as THC) on the Infiniti.  (*Id.*; Hr'g Tr. at 114.)  Relying on all the previous information and the ion swab results, Cooper sought and obtained a warrant to install a mobile tracking device on the Infiniti.  (Gov. Ex. 14 at 5.)

On July 27, 2023, the CD allowed Cooper to search their phone, which revealed a prior phone call with a contact listed as "Mary" and the phone number 612-210-XXXX.  (Gov. Ex. 1 at 4.)  An administrative subpoena to Verizon identified Cheryl Dirksmeyer, Dirksmeyer's mother, as the account holder.  (*Id.*)  Relying on the prior information and this newly obtained information, Cooper sought and obtained a PRTT warrant for the 612-210-XXXX phone.  (*Id.* at 10–11.)

The PRTT warrant for the 612-210-XXXX phone provided evidence that on three occasions, Dirksmeyer departed from the New Hope Apartment and traveled south toward Olmstead County.  (Gov. Ex. 2 at 4.)  Cooper described the travel pattern as including frequent stops not lasting more than fifteen minutes and often at nighttime.  (*Id.*)  Cooper explained that in his training and experience, that travel behavior was consistent with narcotics trafficking.  (*Id.*)  Cooper noted, however, that the movement of Dirksmeyer's phone did not align with the tracked movement of the Infiniti, which led Cooper to the conclusion that Dirksmeyer used the Jeep as her primary vehicle.  (*Id.*)

On August 29, 2023, Cooper and Johnson returned to the New Hope Apartment parking lot and observed Dirksmeyer's Jeep. (*Id.*) Johnson administered two ion swabs on the Jeep's door handles. (*Id.*) One ion swab alarmed for methamphetamine and the other for cocaine. (*Id.* at 4–5.) As a result, Cooper applied for and obtained a warrant to install a tracking device on Dirksmeyer's Jeep. (*Id.* at 6.)

The location data from the Jeep was consistent with the data obtained from Dirksmeyer's phone. (Gov. Ex. 4 at 8.) Additional surveillance of the Jeep location and phone location revealed more suspicious travel. (*Id.*) On September 8, 2023, Dirksmeyer's phone and Jeep moved from the New Hope Apartment and began traveling southbound, so Cooper sought and obtained a warrant to search the Jeep and Dirksmeyer's person. (*Id.*)

Together with another officer, Cooper executed a traffic stop on the Jeep shortly after receiving the warrant. (Gov. Ex. 5 at 9.) Dirksmeyer was the only occupant of the vehicle when the Jeep was stopped and searched. (*Id.*) The search of the Jeep uncovered a cellular device and approximately 1500 grams of a white crystalline substance that field tested positive for methamphetamine. (*Id.* at 9–10; Gov. Ex. 8 at 8–9.)

Relying on the same information from the previous warrants and the results of the traffic stop, Cooper sought and obtained a warrant for the New Hope Apartment. (Gov. Ex. 5 at 12–15.) That search, executed after Dirksmeyer had been taken into custody, uncovered money, over 5,400 grams of methamphetamine, a handgun, four phones, and

other drug paraphernalia. (*Id.* at 16; Gov. Ex. 8 at 9.) Cone-Wade was the only person present at the New Hope Apartment at approximately 11:00PM when the search was executed. (Gov. Ex. 11 at 8.) Dirksmeyer made a post-*Miranda* statement claiming responsibility and ownership for everything located during the search of the Jeep and the New Hope Apartment. (Gov. Ex. 6 at 9.)

Cooper then sought and obtained warrants to search the contents of both the phones discovered in the New Hope Apartment and the phone discovered with Dirksmeyer when she was arrested. (*Id.* at 10; Gov. Ex. 8.)

On November 21, 2023, a grand jury indicted Defendants Meredith A. Dirksmeyer and John Henry Cone-Wade, Sr. by superseding indictment[1] on one count of conspiracy to distribute methamphetamine and two counts of possession with the intent to distribute methamphetamine. (Superseding Indictment at 1–2, Docket No. 16.) Dirksmeyer is charged with one additional count of possession with the intent to distribute methamphetamine. (*Id.* at 2.)

## II.    PROCEDURAL HISTORY

Dirksmeyer filed motions to suppress evidence from search warrants, evidence from search and seizure, and statements from a September 8, 2023, interview. (Mot. Suppress Evid. Search Warrants, Mot. Suppress Evid. Search & Seizure, Mot. Suppress

---

[1] The original indictment brought two counts of possession with intent to distribute against only Dirksmeyer. (Indictment at 1, Nov. 9, 2023, Docket No. 1.)

Statement, Feb. 7, 2024, Docket Nos. 57–59.) Dirksmeyer later withdrew her original motion to suppress statements when the United States indicated it did not intend to use the September 8, 2023, statement. (Supp. Mot. Suppress Statement, June 13, 2024, Docket No. 115.) Dirksmeyer did move to suppress a November 13, 2023, statement. (*Id.*)

Cone-Wade filed motions to suppress evidence from search and seizure, evidence from the search and seizure of four phones, and ion swab evidence. (Mot. Suppress Evid. Search & Seizure, Mot. Suppress Evid. Search & Seizure Four Phones, Feb. 7, 2024, Docket Nos. 54–55; Mot. Suppress Ion Swab Evid., May 20, 2024, Docket No. 107.) Cone-Wade also moved to suppress statements by his co-defendant and his own custodial statements, although those motions were later withdrawn. (Mot. Suppress Statement of Co-Defendant, Mot. Suppress Custodial Statement, May 20, 2024, Docket Nos. 103–104; Minute Entry, June 14, 2024, Docket No. 116.)

Both Defendants filed motions for *Daubert* and *Franks* hearings. (Mots. for Daubert Hr'g, May 20, 2024, Docket Nos. 99, 106; Mots. for Franks Hr'g, July 19, 2024, Docket Nos. 125, 128.)

Magistrate Judge John F. Docherty held a motion hearing, after which he issued an R&R recommending that the Court deny in part and grant in part Dirksmeyer's motions and deny Cone-Wade's motions. (R. & R. at 44–45.) The R&R recommended granting Dirksmeyer's motion to suppress the evidence obtained from the ion swab of the Infiniti

and the subsequent tracker warrant based on that ion swab. (*Id.* at 44.) After the United States indicated that it did not intend to use any of Dirksmeyer's statements, the Magistrate Judge recommended denying Dirksmeyer's motion to suppress statements as moot. (*Id.* at 45.) The Magistrate Judge recommended denying Cone-Wade's motions to suppress after finding he lacked standing to challenge the searches. (*Id.* at 19.) The absence of standing precluded Cone-Wade from seeking a *Franks* hearing as well. (*Id.* at 19.) The Magistrate Judge also issued an order denying Defendants' requests for a *Daubert* hearing and Dirksmeyer's request for a *Franks* hearing. (*Id.* at 45–46.) In his order denying a *Daubert* hearing, the Magistrate Judge explained that *Daubert* does not apply to search warrants. (*Id.* at 38.) Dirksmeyer's motion for a *Franks* hearing was denied because she did not make a showing that the affidavit contained a false statement made knowingly, intentionally, or with reckless disregard for the truth—and that even so, if the statements were corrected, there would still be probable cause. (*Id.* at 39–43.)

The Magistrate Judge determined that for all other evidence, probable cause existed to issue the warrants and, even if the warrants were deficient, the good-faith exception applied. (*Id.* 18–38.)

Dirksmeyer and Cone-Wade both object to the Magistrate Judge's findings on probable cause and Cone-Wade objects to the finding that he lacked standing. (Dirksmeyer Suppl. Obj., Oct. 4, 2024, Docket No. 156; Cone-Wade Suppl. Obj., Oct. 28.

2024, Docket No. 159.)  Defendants also appeal the denial of a *Franks* hearing but do not appeal the denial of a *Daubert* hearing.  (*Id.*)

The United States objects to the Magistrate Judge's conclusion that evidence obtained from a warrantless ion swab on a vehicle should be suppressed absent probable cause under the automobile exception, instead arguing that a reasonable suspicion standard should apply.  (Gov. Obj. at 2, Oct. 4, 2024, Docket No. 156.)

## DISCUSSION

### I.    STANDARD OF REVIEW

After a magistrate judge files an R&R, a party may "serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b).  "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections."  *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008).  For dispositive motions, the Court reviews de novo a "properly objected to" portion of an R&R.  Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).

A party may also appeal a magistrate judge's order on non-dispositive pre-trial matters to the district court, but the standard of review is extremely deferential.  Fed. R. Civ. P. 72(a); *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007).  The Court will reverse such an order only if it is clearly erroneous or contrary to law.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a).  "A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence

is left with the definite and firm conviction that a mistake has been committed.'" *Lisdahl v. Mayo Found.*, 633 F.3d 712, 717 (8th Cir. 2011) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).  "A decision is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure."  *Knutson v. Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 554, 556 (D. Minn. 2008) (internal quotation marks omitted).

## II.   MOTIONS TO SUPPRESS EVIDENCE

Dirksmeyer and Cone-Wade each object to the Magistrate Judge's conclusions on probable cause.  First, Cone-Wade challenges the determination that he lacked standing to challenge the constitutionality of the searches and seizures.  He then objects to the Magistrate Judge's findings on the sufficiency of the nexus between the suspected criminal activity and the New Hope Apartment.  Cone-Wade also restates his prior arguments that, lacking standing, the Magistrate Judge did not address.  Dirksmeyer objects to a finding of probable cause on nine warrants but those objections can be consolidated into two categories: that the information from the CD was uncorroborated and presumptively stale absent a specific timeframe, and that probable cause was lacking for all the ion swabs, so that evidence should have been excised from the warrant applications.  Dirksmeyer then relies on the excision of that information to argue a cascading effect of each subsequent warrant lacking probable cause.

A.      **Cone-Wade's Standing**

Cone-Wade challenges the admission of physical evidence obtained from the New Hope Apartment and the resulting evidence obtained from the four cell phones found in the New Hope Apartment.  The Magistrate Judge determined that Cone-Wade had no expectation of privacy in any of the places to be searched or any of the items seized.  The evidence, however, supports Cone-Wade's assertion that he was an overnight guest in the New Hope Apartment and thus has standing.

"Fourth Amendment rights are personal and may not be asserted vicariously." *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994).  To challenge a search or seizure, a defendant must show that they had a reasonable expectation of privacy in the area searched or the item seized.  *Id.*  To establish a reasonable expectation of privacy, a claimant must show (1) he had an actual (subjective) expectation of privacy, and (2) his subjective expectation of privacy is one that society recognizes as reasonable.  *Smith v. Maryland*, 442 U.S. 735, 740–41 (1979).  A defendant moving to suppress the evidence has the burden of establishing that they have a reasonable expectation of privacy that was violated by the search.  *United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995).  Overnight guests have a reasonable expectation of privacy, which provides standing to assert Fourth Amendment rights.  *Minnesota v. Olson*, 495 U.S. 91, 96–97 (1990).

Here, the evidence shows Cone-Wade was an overnight guest and had standing to assert Fourth Amendment rights as to the search of the New Hope Apartment.  In other

warrant applications and in support of detention, the United States repeatedly claimed that Cone-Wade lived at the New Hope Apartment with Dirksmeyer. (*See, e.g.*, Gov. Ex. 11 at 10.) When law enforcement executed the warrant around 11:00PM, hours after Dirksmeyer had been arrested, Cone-Wade was occupying the New Hope Apartment alone. Additionally, Dirksmeyer offered no correction to law enforcement's description of Cone-Wade as her boyfriend. (Gov. Ex. 7b at 5:09–13.) Cone-Wade therefore has standing to challenge the search warrant at the New Hope Apartment because he was, at least, an overnight guest. *See United States v. Dickson*, 64 F.3d 409, 410 (8th Cir. 1995) (establishing overnight guest status with only a statement that the defendant had been staying in the residence for a few nights).

Cone-Wade does not have standing, however, to challenge the subsequent warrants to search the contents of the four phones recovered at the New Hope Apartment. The affidavit for that warrant specifically noted that Dirksmeyer took "full ownership and responsibility for everything [police] located." (Gov. Ex. 6 at 9.) Cone-Wade has offered no evidence that he owned or was responsible for the phones. In fact, Cone-Wade cites to a lack of information as to who owns the phones to support his suppression motion. Because Cone-Wade does not have a reasonable expectation of privacy in a third party's phone, he does not have standing to challenge that search. *United States v. Stringer*, 739 F.3d 391, 396 (8th Cir. 2014).

-13-

### B.   Cooperating Defendant Tips

This investigation began based on information provided by the CD, and both Defendants object to the Magistrate Judge's determination that this information could be relied upon in determining probable cause. Both Defendants assert that the CD's tips were unreliable and included presumptively stale information.

#### 1.  Reliability

When an investigation, and resulting affidavit, relies on information from confidential informants, of paramount importance is the reliability of that information. *United States v. Fulgham*, 143 F.3d 399, 401 (8th Cir. 1998). Reliability can be established by showing that the informant has previously provided reliable information or that the information provided has been independently corroborated. *United States v. Caswell*, 436 F.3d 894, 898 (8th Cir. 2006).

Here, the affidavit noted that the CD did not have any crimes of dishonesty and had provided information that had been corroborated by law enforcement. The affidavit does not indicate that the CD provided reliable information in the past. But corroborating information alone can support a finding of reliability. *Caswell*, 436 F.3d at 898. Information can be corroborated through "minor, innocent details." *United States v. Sandoval*, 74 F.4th 918, 922 (8th Cir. 2023). If some details are corroborated, reliability is imputed on uncorroborated information as well. *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993).

The affidavit corroborated many aspects of the CD's information. The CD told law enforcement that Dirksmeyer transported methamphetamine in a black Jeep. Law enforcement verified that Dirksmeyer was a co-registered owner of a black Jeep. Dirksmeyer also previously called law enforcement to report a hit and run of "her" Jeep. The CD told law enforcement about a sale to a specific person, Mark Anthony Sanford, and gave his address. Law enforcement knew Sanford to be a methamphetamine user and that he lived at the addressed provided. Additionally, Cooper was advised that a Rochester detective received similar information about Dirksmeyer's alleged drug trafficking from a different cooperating defendant. Finally, law enforcement confirmed that the number in the CD's phone labeled as "Mary" was linked to Dirksmeyer through Dirksmeyer's mother Cheryl's Verizon account.

Because the affidavit contained independent corroboration of the CD's information, the information is sufficiently reliable and can be used to evaluate probable cause.

### 2. Staleness

Defendants argue that the information provided by the cooperating defendant was presumptively stale because the affidavit provided no timeframe for any alleged illegal conduct by Dirksmeyer. The Eighth Circuit, however, has not adopted an exclusionary rule that forecloses the consideration of information without specific dates. *United States v. Formaro*, 152 F.3d 768, 770 (8th Cir. 1998). The Court can properly conduct a staleness analysis.

No bright line test exists to determine whether information contained in a warrant is stale. *United States v. Lemon*, 590 F.3d 612, 614 (8th Cir. 2010). Instead, the staleness analysis must consider the totality of the circumstances and the specifics of the crime alleged. *United States v. Horn*, 187 F.3d 781, 786 (8th Cir. 1999). In ongoing drug investigations, intervals of weeks or months do not necessarily render the information stale. *Formaro*, 152 F.3d at 771; *United States v. Ortiz-Cervantes*, 868 F.3d 695, 700 (8th Cir. 2017).

Notwithstanding the lack of specific dates, the information provided by law enforcement allows for an inference of conduct within the five months prior to the issuance of the first warrant on September 19, 2023, and more specific conduct six weeks before the issuance of the first warrant. A different law enforcement officer reported a tip that Dirksmeyer engaged in the transport and sale of methamphetamine in February 2023. The affidavit also noted that the CD witnessed a sale of methamphetamine by Dirksmeyer to Sanford in a residence he recently moved into. Law enforcement observed suspected methamphetamine at the same residence in June 2023. Because the conduct alleged was ongoing, the Court finds that the intervals present in this case did not render the information stale, and thus the information need not be excluded from a probable cause analysis.

### C.   Warrantless Ion Swabs

Law enforcement conducted two different warrantless ion swabs: the first on the door handles of both the Infiniti and Jeep, and the second on two door handles of the

Jeep. All parties object to portions of the Magistrate Judge's ion swab analysis. The United States objects to the use of a probable cause standard instead of reasonable suspicion in the absence of a warrant. Dirksmeyer objects to the conclusion that law enforcement had probable cause to ion swab the Jeep. And Cone-Wade objects to the use of the ion swab information in subsequent warrants because he argues that the officers acted in bad faith when obtaining the evidence. The Court must determine if the ion swabs constituted a search under the Fourth Amendment and if so, whether they were reasonable despite the absence of a warrant.

The Fourth Amendment protects against unreasonable searches and seizures of "persons, houses, papers, and effects." U.S. Const. amend. IV. A vehicle falls within the definition of "effect" as used in the Fourth Amendment. *United States v. Jones*, 565 U.S. 400, 404 (2012). A search of an effect occurs when the government physically intrudes with the intent to gather information. *Id.* at 407. The Supreme Court has ruled, for example, that placing a tracking device on the undercarriage of a vehicle, constituted a physical intrusion. *Id.* at 410.

Because the circumstances here are sufficiently analogous to the circumstances in *Jones*, the Court will conclude that the ion swabbing of the vehicles constituted searches under the Fourth Amendment. *Jones* found that installing a tracking device on the undercarriage of the vehicle constituted a search. *Id.* at 410 ("By attaching the device to the [vehicle], officers encroached on a protected area."). *Jones* distinguished itself from

prior opinions by noting that the officers did not just observe the vehicle but rather the officers physically interacted with the car.  *Id.*  Here, law enforcement swabbed the exterior door handle of a vehicle, a physical intrusion, and unquestionably sought to obtain information, so the Court will find that a search occurred when law enforcement conducted the ion swabs of the vehicles.[2]

A warrantless search does not require exclusion of the evidence if the search was nevertheless reasonable.   A reasonableness analysis requires a totality of the circumstances approach and balancing of the need for the search with the extent of the invasion.  *United States v. Rodriguez*, 829 F.3d 960, 961 (8th Cir. 2016).  For a warrantless search to be reasonable, it must fall within a specific exception approved by courts.  *Riley v. California*, 573 U.S. 373, 382 (2014).  The exception applicable here is the automobile exception, which allows for the search of a vehicle on probable cause to believe the vehicle will contain evidence of illegal conduct.  *United States v. Davis*, 569 F.3d 813, 816 (8th Cir. 2009).   Probable cause exists when a reasonable person, evaluating the totality

---

[2] The Court recently found that an ion swab of the exterior door of an apartment did not constitute a search under the Fourth Amendment.  *United States v. Jones*, 731 F. Supp. 3d 1088, 1092–93 (D. Minn. 2024).  In *Jones*, the Court found that the exterior apartment door, exposed to a public hallway, did not constitute curtilage of the home and so the tenant had no reasonable expectation of privacy and accordingly no constitutional protection.  *Id.* at 1092.  A vehicle, however, is a distinct constitutionally protected area, an "effect."  *United States v. Chadwick*, 433 U.S. 1, 12 (1977).  So, in *Jones*, the ion swabbing did not intrude on a constitutionally protected area because the exterior doorknob fell outside the home's curtilage, but here, law enforcement did intrude on a constitutionally protected area, the effect or vehicle, so the ion swabs constituted searches under the Fourth Amendment.

of the circumstances, could believe that evidence of a crime would be discovered. *United States v. Fladten*, 230 F.3d 1083, 1085 (8ᵗʰ Cir. 2000).

### 1. Standard

The United States contends that probable cause is too high a burden for an ion swab and instead, an ion swab should only need to be supported by reasonable suspicion. The United States attempts to analogize ion swabs with other circumstances in which courts have required only reasonable suspicion. For example, the United States cites to cases involving parolees, probationers, public school students, travelers, and people near international borders.[3] Those cases, however, described either a reduction in privacy expectations or a substantial state interest. *See, e.g.*, *Samson v. California*, 547 U.S. 843, 847 (2003) (describing the reduced privacy expectations of parolees and probationers); *see also New Jersey v. T.L.O.*, 469 U.S. 325, 341–42 (1985) (describing the substantial interest of maintaining discipline in the public-school setting). The United States has not presented evidence that obtaining ion swabs in this situation includes either a substantial reduction in the expectation of privacy or that the state interest is so great, it outweighs the privacy expectations. Thus, the Court will overrule the United States's objections and adopt the Magistrate Judge's conclusion that absent a warrant, an ion swab on a vehicle must be supported by probable cause.

---

[3] *Samson v. California*, 547 U.S. 843, 847 (2003); *United States v. Knights*, 534 U.S. 112, 118–121 (2001); *New Jersey v. T.L.O.*, 469 U.S. 325, 341–42 (1985); *United States v. Place*, 462 U.S. 696, 706 (1983); *United States v. Martinez-Fuerte*, 428 U.S. 543, 554–55 (1976).

### 2. Probable Cause

Law enforcement performed ion swabs on the door handles of both the Infiniti and Jeep on July 22, 2023, and only on the Jeep door handles on August 29, 2023.[4]  At the time of the first ion swabs, investigators had received a reliable tip that, using a black Jeep, Dirksmeyer transported and sold methamphetamine between the Twin Cities and Olmstead County.   Law enforcement confirmed that Dirksmeyer was a registered co-owner of the Jeep, that she was the registered owner of the Infiniti, and that she was linked to residences in both New Hope and Rochester, Minnesota.  Law enforcement also reviewed Dirksmeyer's criminal history.   This information sufficiently established probable cause to ion swab the Jeep.  But law enforcement failed to present probable cause to ion swab the Infiniti.

After reviewing the location data of Dirksmeyer's phone, law enforcement determined that the movements Dirksmeyer's phone from the Infiniti were inconsistent. From that evidence, law enforcement determined that Dirksmeyer used the Jeep as her primary vehicle.   Law enforcement noted that Dirksmeyer's phone location data presented a pattern of traveling at night and making frequent stops that lasted less than fifteen minutes.  Cooper stated that in his training and experience, that travel pattern was

---

[4] Dirksmeyer objects to the Magistrate Judge's failure to analyze whether law enforcement had probable cause to ion swab the Infiniti on August 29, 2023.  The affidavits, however, describe two ion swabs for the Jeep and none for the Infiniti on August 29, 2023. (*E.g.*, Ex. 5 at 7–8.)

consistent with narcotics trafficking or dealing.  As a result, Johnson and Cooper returned to the New Hope Apartment and conducted an ion swab on two door handles of the Jeep.  The Court finds that law enforcement had probable cause to ion swab the Jeep door handles on both occasions.

Because the Infiniti was ion swabbed in the absence of a warrant or probable cause, the Magistrate Judge correctly excised the results of that ion scan and resulting warrant to track the Infiniti location from future warrant applications.

### 3.  Bad Faith

Cone-Wade asserts a different argument for exclusion of the ion swab evidence: that the officers' acted in bad faith and violated due process by failing to keep records and turn on their body cameras.  Cone-Wade relies on *Arizona v. Youngblood* for the premise that the officers' bad faith conduct constituted a due process violation.  488 U.S. 51 (1988).  *Youngblood* specifically dealt with the failure to preserve potentially exculpatory evidence.  *Id.* at 57–58.  Here, Cone-Wade asserts a failure to **create** potentially exculpatory evidence.

The Court does not need to decide if *Youngblood* requires law enforcement to create exculpatory evidence because Cone-Wade does not show any bad-faith conduct by law enforcement.  Cone-Wade argues the Court can infer bad faith from the officers' failure to follow two policies, one requiring that body cameras be activated and one requiring that reports for evidence collection be made.  But Cooper testified that as a member of the drug task force, his supervisors indicated that less procedure was

required, particularly when operating undercover. (Hr'g Tr. at 51.) Such testimony indicates Cooper believed he was operating within the expectations of his supervisor and thus does not represent bad-faith conduct. Further, courts have found that a failure to follow policy, without more, does not allow for an inference of bad faith. *See, e.g.*, *United States v. Taylor*, 312 F. Supp. 3d 170, 178 (D.D.C. 2018) (citing *United States v. Ramos*, 27 F.3d 65, 72 (3d Cir. 1994)). Because Cone-Wade rests solely on the failure to follow department policy, the Court does not find that the officers acted in bad faith.

### D.    Probable Cause for Warrants

Dirksmeyer objects to a finding of probable cause for nine search warrants: two phone PRTT warrants, two vehicle trackers, her Jeep, her person, the New Hope Apartment, four phones discovered in the New Hope Apartment, and a fifth phone discovered in her Jeep. Cone-Wade objects only to a finding of probable cause for the warrants to search the New Hope Apartment and four phones discovered.

A search warrant must be based upon a finding that there is probable cause to believe that evidence of a crime will be found in the place searched. *See United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). Probable cause exists if, considering the totality of the circumstances, a reasonable person could conclude that there is a "fair probability" that the object of the search warrant may be found in the place searched. *Fladten*, 230 F.3d at 1085 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "[T]he duty of a reviewing court is simply to ensure that the [issuing judge] had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238–39 (cleaned up); *see also United*

*States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996). Moreover, a court "may properly rely on normal inferences drawn by the surrounding circumstances and the allegations of facts contained in the affidavit." *United States v. Carlson*, 697 F.2d 231, 238 (8th Cir. 1983). Evidence obtained from an unlawful search must be excised when reviewing probable cause. *United States v. Hernandez Leon*, 379 F.3d 1024, 1026 (8th Cir. 2004).

### 1.  Warrant for Phone Number 469-712-0XXX

Dirksmeyer objects to the Magistrate Judge's finding that because no evidence was obtained from this warrant, the motion to suppress was moot. Dirksmeyer maintains that this warrant lacked probable cause and led law enforcement to the New Hope Apartment. Contrary to Dirksmeyer's assertions, law enforcement had discovered the New Hope Apartment through other means, and the warrant for this phone number resulted in no evidence. There is no evidence to suppress. The Court will overrule Dirksmeyer's objections and adopt the Magistrate Judge's recommendation to deny this portion of her motion to suppress as moot.

### 2.  Warrant for Phone Number 612-210-XXXX

Dirksmeyer argues that this warrant lacks probable cause because it relies on uncorroborated and stale information, lacks specificity, and fails to link the phone to illegal activity. Because the ion swab and tracking data for the Infiniti were unlawfully seized, that information must be excised from the warrant in a probable cause analysis. *Hernandez Leon*, 379 F.3d at 1026. However, the Court has already determined that the

CD's tip was reliable and not stale, so it may be properly considered. *Caswell*, 436 F.3d at 898; *Formaro*, 152 F.3d at 770.

A sufficient nexus also existed between the alleged illegal conduct and the data sought from the particular cellular phone. A search warrant can only be issued when the affidavit presents evidence of a sufficient nexus between the crime and the place to be searched. *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). Courts consider the "nature of the crime and the reasonable, logical likelihood of finding useful evidence" in determining whether a nexus exists. *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2017) (quotation omitted).

The affidavit asserted that Dirksmeyer engaged in the transport and sale of methamphetamine and that she used the subject phone number to conduct sales, thus establishing a sufficient nexus. The CD described purchasing methamphetamine from Dirksmeyer by contacting her at this phone number. Law enforcement verified that the phone number could be associated with Dirksmeyer, through her mother Cheryl Dirksmeyer's account.[5] The affidavit also stated that those who distribute illicit substances often use cell phones to arrange meetings, to negotiate price, and as a

---

[5] Dirksmeyer argues that the affidavit included misstatements of information, specifically that it listed Dirksmeyer as the Verizon account holder and not her mother, Cheryl. That argument is inaccurate as to the 612-210-XXXX number. The affidavit stated that Cheryl Dirksmeyer held the account for phone number 612-210-XXXX. (Gov. Ex. 1 at 3–4.)

navigational aid.  Thus, the affidavit sufficiently connected the alleged illegal activity to this phone number.

Dirksmeyer also objects to the warrant on specificity grounds.  The specificity requirement of the Fourth Amendment protects people from "general, exploratory rummaging."  *United States v. Martin*, 866 F.2d 972, 977 (8th Cir. 1989).  But specificity is a flexible concept that must be examined based on the conduct at issue.  *United States v. Kail*, 804 F.2d 441, 445 (8th Cir. 1986).

The affidavit accompanying the warrant explains that narcotics trafficking often involves the use of cellular phones to communicate but also the use as a navigational aid.  Here, law enforcement presented reliable information that Dirksmeyer was not only using this phone as a means of communication but also that she was traveling from the Twin Cities to Olmstead County as part of her alleged criminal conduct.  Law enforcement noted precisely the information it sought to obtain from Dirksmeyer's phone, including call and text information and location data, and limited the acquisition temporally to 60 days.  The Court finds that the warrant did not lack specificity.

### 3.  Tracking Warrant for Jeep

Dirksmeyer raises similar objections to the Jeep tracker warrant as raised to the warrant for the 612-210-XXXX number.  As demonstrated by the above analysis, those objections are unfounded.  The Jeep tracker warrant also included additional supporting information.  Not only is this warrant supported by all the same information as the warrant for the 612-210-XXXX number, but it is also supported by location data described

as consistent with narcotics trafficking and a positive ion swab supported by probable cause. Thus, the Court finds this warrant sufficiently supported by probable cause.

### 4. Subsequent Warrants

Dirksmeyer argues that because the subsequent warrants relied on information that was illegally obtained, the evidence from those warrants must also be suppressed. However, the only evidence unlawfully obtained was the ion swabs and tracking data from the Infiniti. The warrant for the 612-210-XXXX number and tracking device were supported by probable cause, as was the second ion swab for the Jeep. Accordingly, that evidence should not be excised from the subsequent warrants, and the evidence will not be suppressed.

Dirksmeyer also objects to the Magistrate Judge's conclusion that the unlawful swabbing of the Infiniti did not result in the suppression of any material evidence because every subsequent warrant originated from the initial illegal ion swab. The origins of the investigation, however, were the reliable cooperating defendant tips, not the first ion swabs. And courts have found that warrants based solely on independently corroborated tips satisfy the probable cause standard. *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002). Accordingly, the Court finds that excision of the illegal ion swabs and tracker information from the Infiniti did not result in the suppression of material evidence such that any subsequent warrant was the fruit of the poisonous tree.

### 5.  New Hope Apartment Warrant

Cone-Wade objects[6] to the finding that the affidavit adequately connected the New Hope Apartment to the alleged criminal activity.  Cone-Wade alleges that the affidavit lacked information to support the premise that the New Hope Apartment was Dirksmeyer's residence and even if it did, that the affidavit offered no support that evidence of a crime would be found at this residence.  Dirksmeyer generally objects to the Magistrate Judge's finding of a nexus without additional argument.

The affidavits did not conclusively prove that the New Hope Apartment was Dirksmeyer's residence, but the affidavits included sufficient information to infer it was her residence.  Law enforcement preparing affidavits in support of search warrants may make reasonable inferences. *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000).  Dirksmeyer listed the New Hope Apartment address on paperwork for one of her phone numbers and for the Jeep she co-owned.  Physical surveillance discovered the Jeep and Infiniti parked at the New Hope Apartment overnight.  And phone location data showed Dirksmeyer leaving and returning to the New Hope Apartment late in the evening and

---

[6] Cone-Wade also restates his prior arguments for suppression of evidence obtained at the New Hope Apartment that the Magistrate Judge did not address after finding that Cone-Wade lacked standing.  However, Dirksmeyer made the same arguments, that the warrant generally lacked probable cause and that the warrant relied on uncorroborated and stale information from the cooperating defendant.  So, while not specifically directed at Cone-Wade's arguments to suppress, the arguments were considered by the Magistrate Judge and the Court.

early in the morning.  Based on that information, law enforcement could have reasonably

inferred that Dirksmeyer resided at the New Hope Apartment.

Law enforcement also demonstrated a nexus between the New Hope Apartment

and criminal activity.  Law enforcement provided evidence that Dirksmeyer used her Jeep

to engage in suspected drug trafficking.  She also exhibited a pattern of behavior, using

that Jeep, that was suspicious of drug trafficking.  When Dirksmeyer engaged in conduct

consistent with drug trafficking, she left from and returned to the New Hope Apartment.

*Cf. United States v. El-Alamin*, 574 F.3d 915, 924 (8th Cir. 2009) (finding sufficient nexus

when, after a controlled buy, the suspect went back their residence).  That information

establishes a nexus between the suspected criminal activity and the New Hope

Apartment.

### E.    Leon Good Faith Exception

Defendants object to the application of the good faith exception because the same

law enforcement officer prepared and executed all of the warrants and thus could not

have reasonably believed that the warrants were valid.  Additionally, Defendants claim

that the law enforcement officer provided misleading information to the issuing judges.

Although the ordinary sanction for searches conducted in the absence of probable

cause is suppression of the evidence recovered in the illegal search, this exclusionary rule

is not applicable "when an officer acting with objective good faith has obtained a search

warrant from a judge or magistrate and acted within its scope."  *United States v. Fiorito*,

640 F.3d 338, 345 (8th Cir. 2011) (quoting *United States v. Leon*, 468 U.S. 897, 920 (1984)).

Among other circumstances, an officer does not rely on a warrant in good faith when the affidavit supporting the warrant contained reckless, knowing, or intentionally false statements that misled the issuing judge, was "so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*." *Id.* (emphasis in original). In determining whether the executing officer had an objectively reasonable belief that probable cause existed, the Court considers the totality of the circumstances, including information known to the officer but not presented to the issuing judge. *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). Simply put, the "objectively ascertainable" inquiry is whether a reasonably well-trained officer would have known that the search was illegal in light of all of the circumstances. *Herring v. United States*, 555 U.S. 135, 145 (2009).

Defendants rely on *Malley v. Briggs* and *Groh v. Ramirez* to support their position that an affiant who executes the warrants is granted less protection under *Leon*. 475 U.S. 335 (1986); 540 U.S. 551 (2004). Both of these cases, however, simply preclude an officer from relying on a magistrate judge's judgment of reasonableness of the warrant when they both drafted and executed the warrant. *Ramirez*, 540 U.S. at 564. Thus, even if an affiant also executes the warrant or applies for additional warrants, the evidence will still be preserved under the good faith exception if it was objectively reasonable to believe that probable cause existed. That standard is met here.

Law enforcement applied for many warrants as they built their case, relying on information previously included in other warrant applications. The Court has found that

each warrant, except the request to track the Infiniti, was supported by probable cause. Thus, it was objectively reasonable for the affiant to believe the warrants were supported by probable cause even if he also executed the warrants and applied for subsequent warrants.

Defendants also argue that because the affidavits included misleading information, the good faith exception does not apply. Defendants cite to the affiant's description of both Dirksmeyer and her mother as "Ms. Dirksmeyer" and a lack of a time frame for the CD's tips as the misleading information. When reviewing the phone records, the affidavit did indicate that the account holder for the 469-712-0XXX number was "Dirksmeyer" without additional clarification. But when the affidavit referenced the 612-210-XXXX number, it clearly noted the account holder as Cheryl Dirksmeyer. Because no information was obtained from the warrant for the 469-712-0XXX number and the affidavit later clarified who the account holder was, the Court does not find that a single instance of ambiguity would have misled the issuing court. Finally, because the Eighth Circuit does not preclude a staleness analysis even when information does not contain specific dates and the Court has found the information provided by the CD was not stale, that information was not misleading.

Because it was objectively reasonable for the officer to rely on the warrant and no misleading information was presented to the issuing judges, the good faith exception

applies.  Accordingly, even if the warrants were defective, the good faith exception would save the evidence from suppression.

## III.    *FRANKS* HEARING

Both Defendants requested and were denied a *Franks* hearing, a decision they now appeal.  Because the Court finds that Cone-Wade has standing to challenge the New Hope Apartment warrant, the Court will not deny his request for *Franks* hearing on a lack of standing.  Instead, the Court will review the Magistrate Judge's order denying a *Franks* hearing on the merits for clear error.  28 U.S.C. § 636(b)(1)(A).

In *Franks v. Delaware*, the Supreme Court announced that a court may require an evidentiary hearing where the defendant makes a "substantial preliminary showing" that an affidavit contains deliberate or reckless falsehoods.  438 U.S. 154, 171–72 (1978); *see also United States v. Ryan*, 293 F.3d 1059, 1061 (8th Cir. 2002); *United States v. Debuse*, 289 F.3d 1072, 1075 (8th Cir. 2002).    The requirement of a "substantial preliminary showing" is not lightly met.  *United States v. Wajda*, 810 F.2d 754, 759 (8th Cir. 1987).  The defendant's attack "must be more than conclusory[,] must be supported by more than a mere desire to cross-examine[,]" and must be accompanied by an offer of proof.  *Franks*, 438 U.S. at 171.  Finally, even if these requirements are met and the false information is set to one side, a hearing is not required if "there remains sufficient content in the warrant affidavit to support a finding of probable cause."  *Id.* at 172; *see also United States v. Ozar*, 50 F.3d 1440, 1446 (8th Cir. 1995); *United States v. Cook*, 936 F.2d 1012, 1014–15 (8th Cir. 1991).

Dirksmeyer and Cone-Wade both moved for a *Franks* hearing on similar allegations of misleading information presented to the issuing judges.  Many allegations originate from the ion swab technology—both statements made about its reliability and the statement that one ion swab alarmed for THC when it was, in fact, Tetryl C.  Defendants also take issue with the representations made about the cell phone account holder.  Cone-Wade argues that law enforcement's failure to activate body worn cameras and to write reports may mislead courts to conclusions that would be disproven in the event of additional reporting.

None of the arguments presented by Defendants meet the substantial showing required to grant a *Franks* hearing.  Defendants presented evidence that the affiant overstated the reliability of ion swabbing technology, but they did not present any evidence that the affiant did so deliberately or recklessly.  Additionally, if the reliability of the ion swabbing was corrected, there would still be a showing of probable cause.  Indeed, courts have recognized the utility of ion swabs in a probable cause finding even without any indication as to their reliability.  *See, e.g.*, *United States v. Carter*, No. 20-035, 2020 WL 6136480, at *9–10 (D. Minn. Sept. 18, 2020).

Similarly, the affiant believed Tetryl C to be an alarm for THC.  Nothing suggests his inaccurate substitution was intentional or reckless.  As with the ion swab reliability, if corrected, the warrants would still be supported by probable cause.  The ion swab that

was incorrectly identified as alarming for THC also alarmed for methamphetamine, so the absence of a reference to THC would not impact the outcome.

The affidavit describes both Dirksmeyer and her mother Cheryl as the cell phone account holders. One of the accounts was for a number that provided no evidence. Because that search provided no evidence, its inclusion in the affidavit does little to support probable cause. Thus, its correction or exclusion would not change the probable cause analysis. The claims that this misinformation requires a *Franks* hearing are also unsupported by any accusations of intentional or reckless inclusion of an inaccurate statement by the affiant.

Lastly, Cone-Wade makes a conclusory statement assuming that, had law enforcement made reports or activated body cameras, evidence disproving some of the statements in the affidavit would have been revealed. Conclusory statements are insufficient to grant a *Franks* hearing. *Franks*, 438 U.S. at 171. Further, Cone-Wade offers no evidence of proof that exculpatory evidence would have been revealed. *Id.*

Overall, Defendants did not include any evidence that the alleged falsehoods were included intentionally or recklessly. And even if Defendants had, correcting or excluding the misstatements would not have changed the probable cause analysis. Therefore, the Magistrate Judge did not clearly err in denying Defendants' motions for a *Franks* hearing.

## CONCLUSION

After conducting a de novo review of the warrants, the Court finds that the Magistrate Judge correctly evaluated probable cause. The ion swab and tracker warrant

for the Infiniti lacked in probable cause and were properly excised. The Court disagrees with the finding that Cone-Wade did not have standing to challenge the search of the New Hope Apartment because the evidence suggests he was an overnight guest, but the warrant was nevertheless supported by sufficient probable cause. The Court will thus sustain Cone-Wade's objection as to standing but overrule all other objections and adopt the R&R in all other respects. Additionally, finding no clear error in the Magistrate Judge's decision to deny a *Franks* hearing, the Court will affirm that order.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendant Dirksmeyer's Objections [Docket No. 138] and Supplemental Objections [Docket No. 156] are **OVERRULED**.

2.  Defendant Cone-Wade's Objections [Docket No. 139] and Supplemental Objections [Docket No. 159] are **SUSTAINED in part** and **OVERRULED in part** as follows:

    a.  **SUSTAINED** in that Cone-Wade does have standing to challenge the New Hope Apartment search warrant but **OVERRULED** in all other respects.

3.  United States's Objection [Docket No. 142] is **OVERRULED**.

4.  Report and Recommendation [Docket No. 135] is **ADOPTED in part** and **REJECTED in part** as follows:

    a. **REJECTED** in that Cone-Wade does have standing to challenge the New Hope Apartment search warrant but **ADOPTED** in all other respects.

5. Order Denying *Daubert* and *Franks* Hearing [Docket No. 136] is **AFFIRMED**.

6. Defendant Dirksmeyer's Motion to Suppress Evidence from Search Warrants [Docket No. 57] is **GRANTED in part** and **DENIED in part** as follows:

    a. **GRANTED** as to the tracker warrant for the Infiniti and **DENIED** in all other respects.

7. Defendant Dirksmeyer's Motion to Suppress Evidence from Search and Seizure [Docket No. 59] is **DENIED**.

8. Defendant Dirksmeyer's Motion to Suppress Statement [Docket No. 115] is **DENIED as moot**, with leave for Defendants to renew their objections should the United States choose to introduce these statements at trial.

9. Defendant Cone-Wade's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 54] is **DENIED**.

10. Defendant Cone-Wade's Motion to Suppress Evidence Obtained as a Result of Search and Seizure of Four Phones [Docket No. 55] is **DENIED**.

11. Defendant Cone-Wade's Motion to Suppress Ion Swab Evidence [Docket No. 107] is **DENIED**.

DATED:  January 16, 2025                        s/John R. Tunheim
at Minneapolis, Minnesota.                      JOHN R. TUNHEIM
                                                United States District Judge